IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GENCO CONSTELLATION LTD., § | | |
|    *Plaintiff*, § | | |
| § | | C.A. No. _____ |
| v. § | | |
| § | | IN ADMIRALTY, Rule 9(h) |
| BG SHIPPING CO. LTD., § | | |
|    *Defendant* § | | |

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT**

Plaintiff GENCO CONSTELLATION LTD. ("**Plaintiff**" or "**Genco**"), by and through its undersigned attorneys, expressly subject to all rights of arbitration, as and for its Verified Original Complaint against Defendant BG SHIPPING CO. LTD. ("**Defendant**" or "**BG Shipping**"), alleges as follows upon information and belief:

**SUBJECT MATTER JURISDICTION AND VENUE**

1. This is an admiralty or maritime claim within the Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and within the meaning of Federal Rule of Civil Procedure "" 9(h). It also arises under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. Federal jurisdiction also exists because this action arises under the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 208 and the Federal Arbitration Act, 9 U.S.C. § 8.

2. Venue is proper in this Court under 28 U.S.C. § 1391 in that the property of Defendant, the M/V BGG HEZHOU, is or will be during the pendency of this action within the District and jurisdiction of this Honorable Court.

## PARTIES

3. At all material times, Plaintiff Genco Constellation Ltd. was and still is a company registered in the Republic of the Marshall Islands, with its registered office in Majuro, Marshall Islands.

4. At all material times, Defendant BG Shipping Co. Ltd., upon information and belief, was and still is a company registered in Hong Kong, with its headquarters in Hong Kong.

## FACTS

Charter Between Genco and BG Shipping

5. Genco is the owner of the M/V GENCO CONSTELLATION (the "**Vessel**").

6. By charterparty made by way of recap on an amended NYPE 1946 form, dated July 4, 2022 (the "**Charter**"), Genco, as owners, chartered the Vessel to defendant BG Shipping, as charterers, for "ONE TCT WITH ONE LADEN LEG VIA CHINA TO EAST/WEST AFRICA… FOR DURATION ABT 75 DAYS WOG". See Ex. 1 (Charter).

7. The Charter is governed by English law and provides for the resolution of any disputes arising under the Charter to be resolved in arbitration in London. *Id.* at cl. 17, 30.

8. Clause 8 of the Charter provides that "The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, lash, unlash, secure, unsecure, tally, trim, and discharge the cargo at their expense under the supervision of the Captain…." *Id.* at cl. 8.

9. Lines 112-113 of the Charter provide that "Charterers will not suffer or permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the Owners in the Vessel…". *Id.* at cl. 18

10. Upon information and belief, BG Shipping, as charterers, entered into a sub-charterparty with SMC Cooperation Limited ("**SMC**") in respect of the Vessel; further, SMC sub-sub-voyage chartered the Vessel to Hizone Group Co. Ltd. ("**Hizone**").

11. Notably BG Shipping did not notify or request approval from Genco with respect to entering into a sub-charterparty with SMC, nor with respect to assigning any claims, rights or obligations to SMC or Hizone. *See* Ex. 1 at lines 16-17. Moreover, BG Shipping did not notify or advise Genco of any claims it had against Genco prior to the initiating of the action in Ghana, as will be more fully explained below.

<u>Loading Dispute</u>

12. On or about July 12, 2022, the Vessel was delivered to BG Shipping, as charterers.

13. On July 30, 2022, the Vessel arrived at her first load port, Tianjin, China, and commenced loading steel cargo.

14. On August 4, 2022, the Master issued a Letter of Protest in relation to the failure of Charterer to construct appropriate wooden frames in hold Nos. 2, 3, and 4 of the ship to prevent the cargo from shifting and damaging the Vessel.

15. On August 5, 2022, the Vessel completed loading.

16. On or about August 8-9, 2022, the Vessel arrived at its second load port, Longkou, China and commenced loading various types of steel and metal.

17. On August 16, 2022, the Master issued another Letter of Protest in relation to the improper stowage of steel on the tank top without proper dunnage.

18. On August 17, 2022, the Master issued a third Letter of Protest when the wooden structure installed by Charterer collapsed in hold No. 4. Around this time, owners and charterers/sub-sub-voyage charterers began discussions to find a resolution to the matter.

19. On August 23, 2022, BG Shipping attempted to perform adjustment works in relation to the stowage, lashing and loading of various cargo.

20. On September 2, 2022, Charterers purported to give further instructions to the Vessel, offering to, *inter alia*, re-stow the disputed cargo; re-stow commenced on September 5, 2022.

21. On September 12, 2022, the Master issued another Letter of Protest on the basis that Charterers failed to provide a dunnage plan and dunnage calculation for deck cargo and hatch covers.

22. On September 22, 2022, the Master issued a Letter of Protest in relation to the condition of the jumbo bags in hold No. 3.

23. On September 27, 2022, the Vessel departed from Longkou, China and, on September 28, arrived at the third load port in Qingdao/Dongjiako, China. While there, on September 30 the Master issued a Letter of Protest in relation to the condition of the jumbo bags in hold No. 1, and on October 6, 2022, issued a damage report of cargo in hold No. 5 due to improper cargo handling of stevedores during the re-stowing of cargo.

24. On October 7, 2022, the Vessel departed from Dongjiako, China, bounded for Lagos, Nigeria and Tema, Ghana. It arrived at Tema on December 5, 2022.

Hizone Arrests Genco Vessel in Ghana

25. On or about December 13, 2022 and after completion of the discharge operation at Tema, Ghana, Hizone (the sub-sub-voyage charterers) filed an *ex parte* motion in the Superior Court of Judicature, High Court of Justice, Tema (the "**Ghana Court**") for the arrest of the Vessel.

26. An affidavit filed in support of the *ex parte* arrest motion advised the Ghana Court that Hizone had also issued a Writ of Summons and Statement of Claim against Genco and the

Vessel, seeking, *inter alia*, US $8,138,097.46 for "loss incurred by the Plaintiff due to the Defendant's failure and/or refusal to load the Plaintiff's cargo on the vessel… at Longkou Port, Shangdon Province, China." *See* Ex. 2 at p.2.

27. Hizone specifically describes damages relating from loss of freight (apparently as a result of cargo not loaded), losses due to re-stowage at Longkou, re-stowage at Dongjiakou, and re-stowage at Lagos, plus losses due to delay in construction projects.

28. Hizone's Statement of Claim alleges that it is the assignee of BG Shipping's rights under the Charter by virtue of BG Shipping's assignment of such rights to SMC, and SMC's assignment of such rights to Hizone. Hizone alleges that it brings the action in its capacity as assignee and as such, has "all the rights of BG SHIPPING CO. LIMITED… to claim any indemnity or damages or losses or expenses of whatsoever nature for breach of the Charterparty [i.e. the Charter] by the Owners…". *See* Ex. 2 at p. 3, ¶1.

29. On December 14, 2022, the Ghana Court issued an order for the arrest and detention of the Vessel (the "**Arrest Order**"), which "ordered that the Harbour Master should arrest and detain the [Vessel] currently docked at Tema… to be released if the owners post Bank Guarantee of One Hundred Million Ghana Cedis…". *See* Ex. 3 at p.1.

<u>Hizone Refuses Security</u>

30. On December 16, 2022, Genco and the Vessel applied for release of the Vessel.

31. Hizone was required to make a repeat application within 10 days of the *ex parte* arrest order, but failed to do so.

32. During this time, Genco sought release of the Vessel with the Ghana Court, and was prepared to offer a Letter of Undertaking ("**LOU**") from its protection and indemnity ("**P&I**") club as security for Hizone's claim.

33. Indeed, Genco submitted the LOU but the Ghana Court did not release the Vessel based on the LOU submitted.

34. As such, the Vessel remains detained in Ghana. Genco remains willing to submit the LOU from its P&I club in the full amount of Hizone's claim.

Genco Seeks Security in South Africa

35. As detailed herein, Genco has claims against BG Shipping arising out of the Charter. As such, Genco is seeking security for its claims.

36. In addition to pursuing this action against BG Shipping, Genco commenced an action in South Africa against the bunkers on board the MV BULK PARAGUAY and BG Shipping, charterer of the MV BULK PARAGUAY on January 20, 2023.[1]

37. In support of the arrest of those bunkers, Genco advised the South Africa Court that it was seeking security, interest and costs totaling US $15,787,089.60, or the value of the property arrested, whichever is less.

38. The South Africa Court, by order dated January 20, 2023, ordered the Sheriff for the district to arrest the bunkers on board the MV BULK PARAGUAY for the purpose of providing security to Genco for claims Genco intends to refer to arbitration in London against BG Shipping arising out of the Charter.[2] As a result, US $1,084,828 in bunkers was arrested.

39. The bunkers were subsequently released on or about January 22, 2023, after BG Shipping provided a Letter of Undertaking from its P&I Club dated January 22, 2023 to Genco in the amount of US $1,084,828.

---

[1] The action was commenced in the High Court of South Africa, Kwazulu-Natal Local Division: Durban (Exercising its Admiralty Jurisdiction) (the "**South Africa Court**"), before the Honourable Mr Justice Vahed, Case No.: A1/2023, between Genco Constellation Limited, as Applicant, and BG Shipping Company, and the Bunkers on Board the MV "BULK PARAGUAY", as Respondents.

[2] *See* Ex. 4 at ¶1 (South Africa Court Order dated Jan. 20, 2023).

BG Shipping

40. Upon information and belief, BG Shipping has its headquarters in Wanchai, Hong Kong, China.[3]

41. Upon information and belief, BG Shipping is a wholly-owned subsidiary of Guangxi Beibu Gulf International Port Group Co., Ltd.[4], which itself is a Chinese state-owned enterprise.[5]

42. On its website, BG Shipping lists its fleet of vessels, including the M/V BBG HEZHOU[6]. BG Shipping notes in its company "Milestones" that "BBG HEZHOU joins the fleet" in April 2022. [7]

43. Further, BG Shipping is a member of the Hong Kong *Shipowners* Association, identified as "Shipowners, Ship Managers, Ship Operators."[8]

44. As such, BG Shipping represents itself as the owner of the M/V BBG HEZHOU, despite the fact that the registered owner of the M/V BBG HEZHOU is an entity called SPDBFL No Fifty-Three (Tianjin) Shipping Leasing Company Limited ("**SPDBFL 53**").[9]

45. The M/V BBG HEZHOU's commercial operator is SPDB Financing Leasing Company Limited (Puyin Financial Leasing Company Limited) ("**SPDBFL**").

SPDBFL, the "Registered Owner"

46. SPDBFL 53 does not appear to have any distinct internet presence.

---

[3] *See* https://www.bghk.com.hk/en/contact.php.

[4] *See* https://www.bghk.com.hk/en/introduction.php.

[5] *See* https://www.tradewindsnews.com/shipyards/chinese-leasing-company-spdb-splashes-out-96m-on-ultramax-bulkers/2-1-890558.

[6] *See* https://www.bghk.com.hk/en/fleet.php.

[7] *See* https://www.bghk.com.hk/en/milestone.php.

[8] *See* "Member List, BG Shipping Co. Ltd.", http://www.hksoa.org/member_list/detail/1047/.

[9] *See* Ex. 5 (Liberian Certificate of Encumbrance for the BBG HEZHOU).

47. Upon information and belief, SPDBFL 53 is a wholly-owned subsidiary of SPDBFL.[10]

48. Upon information and belief, SPDBFL is a financial leasing company that is a subsidiary of Shanghai Pudong Development Bank Co., Ltd.[11]

49. According to reports, SPDBFL "was set up in 2012 as a financial leasing venture between Shanghai Pudong Development Bank, Commercial Aircraft Corporation of China, Shanghai International Group and Shanghai Long Hua International Aviation Investment."[12]

50. Upon information and belief, SPDBFL frequently enters into Chinese sale and leaseback transactions ("**finance leases**").

51. For example, in November 2020 it was reported that, Scorpio Tankers Inc. "executed an agreement with SPDB Financial Leasing Co., Ltd to sell and leaseback four MR product tankers."[13]

52. Hafnia Limited reported that "CTI [Chemical Tankers Inc.] entered into sale and leaseback arrangements with SPDB Financial Leasing Co., Ltd. for two HMD built chemical tanker vessels… and two HMD built chemical tanker vessels…. CTI has entered into 10-year

---

[10] *See* Ex. 6 (SPBDFL 53 ownership information from Seasearcher.com).

[11] *See id.*; *see also* "About SPDB", https://spdb.e-ciie.com/.

[12] *See* "Chinese leasing company SPDB splashes out $96m on ultramax bulkers", TradeWinds, Oct. 9, 2020 https://www.tradewindsnews.com/shipyards/chinese-leasing-company-spdb-splashes-out-96m-on-ultramax-bulkers/2-1-890558; *see also* SPDB Annual Report 2019, at p. 61 https://eng.spdb.com.cn/investor_relations/annual_report/202006/P020200611336256056334.pdf ("SPDB Financial Leasing Co., Ltd., established in May 2012, is China's first financial leasing Company jointly incorporated by commercial bank, advanced manufacturing enterprise and comprehensive financial holding group.").

[13] *See* Eneti Inc. Form 20-F/A, dated Apr. 20, 2021, at F-60 (https://www.eneti-inc.com/sec-filing/0001587264-21-000041/).

bareboat charters for the four vessels commencing upon their respective deliveries to SPDBFL…".[14]

53. Additionally, it is reported in October 2022 that SPDBFL financed three handysize vessels in "sale-and-leaseback transactions followed by bareboat charters back to Ciner [Shipping Industry & Trading]. The similarly structured refinancing of the three handysizes with the same Chinese leasing house… is the latest in a long line of such deals for [Ciner]."[15]

54. It also appears that BG Shipping has previously engaged in similar sale-leaseback transactions with SPDBFL. It was reported in October 2020, that SPDBFL ordered four ultramax bulker newbuildings, for delivery in late 2021, "on the back of long-term charters of three year or more from BG Shipping… A BG executive confirmed the charters but declined to disclose details of the contract."[16]  The BG executive went on to say: "The charter of these four bulk carriers is part of our company's fleet expansion programme."[17]

Finance Lease Structures

55. There are several key features of a finance lease transaction.

56. First, the charter will often be on "hell or high water" terms, meaning the named lessee is legally obligated to fulfil their contractual obligations, including payment obligations, regardless of any difficulties. *See* Declaration of Patrick Smith ("**Smith Decl**.") at ¶6.2.

---

[14] *See* Hafnia Limited Prospectus, dated March 1 2022, at p. 65 https://hafniabw.com/wp-content/uploads/2022/03/Hafnia-Prospectus-2022.pdf

[15] *See* "Ciner gets fresh Chinese leasing finance for a string of bulkers," TradeWinds, Oct. 26,2022 https://www.tradewindsnews.com/finance/ciner-gets-fresh-chinese-leasing-finance-for-a-string-of-bulkers/2-1-1341164.

[16] *See* "Chinese leasing company SPDB splashes out $96m on ultramax bulkers", TradeWinds, Oct. 9, 2020 (https://www.tradewindsnews.com/shipyards/chinese-leasing-company-spdb-splashes-out-96m-on-ultramax-bulkers/2-1-890558).

[17] *Id.*

57. Second, the residual economic risk of ownership usually remains with the lessee; that is, the lessee usually has an obligation to purchase the vessel at the end of the lease and, if it fails to do so, will have to pay an amount equivalent to the outstanding capital investment made by the registered owner. (By comparison, a true operating charter typically does not contain a purchase obligation and the lessee is able to return the vessel to the registered owner at the end of the lease, without any further payment being required. Additionally, operating leases generally have off-hire provisions, for dry-docking and other capital expenses that deprive the lessee of the vessel's use. Thus, in a true operating lease, the registered owner bears the risk of any decline in the value of the vessel.) *Id.* at ¶6.3.

58. Third, the purchase price the lessee is obligated to pay pursuant to the purchase obligation is typically lower than the anticipated fair market value of the vessel, and usually linked to a "principal" amount outstanding under the original lease financing – not the actual vessel value at the time. *Id.* at ¶6.4.

The Agreement Between BG Shipping and SPDBFL 53 Is a Disguised Financing

59. Upon information and belief, BG Shipping and SPDBFL (through its subsidiary SPDBFL 53) entered into a finance lease transaction for the M/V BBG HEZHOU, pursuant to which SPDBFL 53 is the owner in name only, while BG Shipping is the true owner, pursuant to Texas Uniform Commercial Code §1.203. *See Richardson Stevedoring & Logistics Servs., Inc. v. Daebo Int'l Shipping Co. Ltd.*, 2015 WL 1781712 (E.D. La. Apr. 20, 2015); *In re Lykes Bros. Steamship Co., Inc.*, 196 B.R. 574 (Bankr. M.D. Fla. 1996).

60. As noted above, a key feature of a finance lease transaction is a purchase obligation, whereby "the lessee is… bound to become the owner of the goods", usually for a purchase price lower than the fair market value of the vessel. *See* §1.203(b)(2) and (4).

61.     Indeed, under Texas law, if a purported lease provides on its face that upon compliance with its terms, the lessee becomes the owner of the property for no additional consideration, then the lease is deemed as a matter of law to be intended for a security.

## AS AND FOR A FIRST CAUSE OF ACTION
## BREACH OF CHARTER

62.     Plaintiff repeats and realleges paragraphs 1 through 61 as if fully set forth herein.

63.     Clause 8 of the Charter provides "The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency."

64.     The English Courts imply a duty of Charterers to indemnify owners against loss or damage suffered, or liability incurred, by the owners as a consequence of complying with the charterers' orders or directions (as per Mustill, J., *in The Georges Christos Lemos* (third party proceedings) [1991] 2 Lloyd's Rep. 107 and in *The Athanasia Comninos* [1990] 1 Lloyd's Rep. 277, at page 290, and per Cresswell, J., and Evans, L.J., in *The Island Archon* [1993] 2 Lloyd's Rep. 388, at pages 404 and 407, and [1994] 2 Lloyd's Rep. 227 (C.A.), at page 237.)

65.     Applying the above principle, Genco claims that Charterers gave orders which exposed Genco to the present arrest of the Vessel in Ghana including (a) ordering the Vessel to load cargo of a quantity and/or in a manner which it was not safe to load; and/or (b) ordering the Vessel to load cargo which required the Master to intervene and insist on re-stowage.

66.     As a consequence of those orders, which were in breach of the Charterparty, the Vessel experienced delay re-stowing the cargo, which otherwise would not have occurred. This delay is the basis for Hizone's alleged Claim and the arrest of the Vessel in Ghana.

67.     On the basis of the implied indemnity Genco is entitled to recover any liability incurred in relation to the Hizone Claim. Genco is also entitled to be indemnified (even if the Hizone Claim fails) in respect of the loss and damage arising in respect of the arrest of the Vessel.

68. Further, pursuant to the terms of lines 112-113 of the Charter: "…Charterers will not suffer nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the Owners in the Vessel…".

69. The arrest of the Vessel has given rise to a "lien or encumbrance" which gives a third party (subject to the validity of the assignments) a right having priority over the Genco's interest in the Vessel.

70. BG Shipping is therefore responsible for the present arrest and are obliged to post security in order to obtain her release, and in so far as they have failed to do so, they are in breach of the Charter, for which Owners are entitled to damages and/or an indemnity in as may be presently ascertained of not less than US $13,684,147.29 from BG Shipping.

## AS AND FOR A SECOND CAUSE OF ACTION
### TRESPASS TO CHATTELS

71. Plaintiff repeats and realleges paragraphs 1 through 70 as if fully set forth herein

72. Genco's Vessel has been detained in Ghana since December 14, 2022.

73. BG Shipping is responsible for the present arrest, as it assigned fictitious claims to sub-charterers that were not approved by Genco, and BG Shipping is therefore obliged to post security in order to obtain her release.

74. As a direct result of BG Shipping's actions, Genco has been dispossessed of the Vessel for a substantial time.

75. The arrest has harmed Genco and impaired the Vessel's condition.

76. The continued arrest and detention of the Vessel in Ghana has deprived Genco of its right to possess the Vessel for over a month, and continues to cause damage to Genco.

77. As such, BG Shipping is liable to Geno for the damage it has caused to the Genco Vessel.

**RULE B ALLEGATIONS**

78. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 77 as if fully set forth herein.

79. The requirements of Rule B are met. First, Plaintiff has a valid maritime claim against BG Shipping *i.e.*, a claim for breach of Charter and Trespass to Chattel. The Charter is a maritime contract because the services provided thereunder primarily relate to the carriage of goods by water.

80. Second, BG Shipping cannot be found within the Southern District of Texas.

81. Third, upon information and belief, BG Shipping has or will have during the pendency of this action, property located within the Southern District of Texas, including the M/V BBG HEZHOU, a 2022 built, Liberian flagged, bulk carrier, IMO No. 9922263, berthed or to be berthed at Woodhouse Terminal, Port of Houston, 1606 Clinton Drive, Houston, TX 77547.

82. Fourth, there is no statutory bar to recovery.

83. Interest, costs, and attorney's fees are routinely awarded to the prevailing party in arbitrations held pursuant to English law. As best as can be presently estimated, Plaintiff expects to incur attorney's fees and costs in the arbitration of $2,649,587.76.

84. Accordingly, Plaintiff seeks to obtain jurisdiction over BG Shipping through attachment of BG Shipping's property within the Southern District of Texas pursuant to the Process of Maritime Attachment and Garnishment to be issued against such property pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and in order to secure its claims for Breach of Charter and Trespass to Chattels.

85. The Defendant BG Shipping cannot be found in the Southern District of Texas within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and

Asset Forfeiture Actions but, upon information and belief, Defendant BG Shipping has, or will have during the pendency of this action, assets within the Southern District of Texas and subject to the jurisdiction of this Court, namely the M/V BBG HEZHOU berthed or to be berthed at Woodhouse Terminal, Port of Houston, 1606 Clinton Drive, Houston, TX 77547.

86.     Plaintiff seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions attaching any assets of the Defendant within the Southern District of Texas up to the amount of $15,248,907.05 (equivalent to Plaintiff's total claim of $16,333,735.05[18] less security obtained in South Africa of $1,084,828.00) for the purpose of obtaining personal jurisdiction over the Defendant BG Shipping and to secure the Plaintiff's claims as described above.  *See* Ex. 7.

## ARBITRATION

87.     Clause 17 of the Charter between Plaintiff and Defendant BG Shipping contains an arbitration provision which provides for London Arbitration of all disputes and the application of English law.  Ex. 1 at cl. 17, 30.

88.     Under 9 U.S.C. § 208, the provisions of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, apply to actions brought under Chapter 2, 9 U.S.C. § 201, *et seq.*, the "New York Convention" to the extent that the FAA is not in conflict with the New York Convention. There is no conflict between 9 U.S.C. § 8 and the New York Convention.  Under 9 U.S.C. § 8, a proceeding may be begun by an arrest of attachment "according to admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award."

---

[18] This includes security for costs of 10% of Genco's principal claim, which Genco has been informed by English counsel is a reasonable estimate of the costs of the arbitration proceedings in London.

89. Plaintiff seeks to commence arbitration under the terms of the Charter, pursuant to 9 U.S.C. § 8, by the attachment of the M/V BBG HEZHOU according to the usual course of admiralty proceedings and to obtain security in and of such arbitration for its entire claim, plus interest, costs, and attorney's fees.

90. Plaintiff also specifically reserves all other rights and remedies contained in the Charter, none of which are waived.

91. After the attachment of the M/V BBG HEZHOU and any other of BG Shipping's goods and chattels, credits and effects in the District pursuant to the Process of Maritime Attachment and Garnishment and the sale of the attached property under the direction of this Court and the deposit of the sale proceeds into the registry of the Court, Plaintiff requests, pursuant to 9 U.S.C. § 208 and 9 U.S.C. § 8, that this action be stayed in favor of arbitration in London under the Charter, with this Honorable Court retaining jurisdiction to enforce any subsequent award issued in the arbitration against such property or sale proceeds.

## INDEMNITY IN FAVOR OF U.S. MARSHAL

92. Plaintiff agrees to hold harmless and indemnify the U.S. Marshal and all of its deputies arising from any and all liability as a result of attaching the property of BG Shipping in the Southern District of Texas, specifically including the M/V BBG HEZHOU.

## CONDITIONS PRECEDENT

93. All conditions precedent have been satisfied and/or discharged.

94. All and singular, the premises of this Verified Original Complaint are true and correct and within the admiralty and maritime jurisdiction of the United States and of this Honorable Court.

**PRAYER FOR RELIEF**

95. Upon information and belief, Defendant BG Shipping has assets in the District, including the vessel M/V BBG HEZHOU.

96. Plaintiff seeks an Order from this Court directing the Clerk of Court to issue a Process of Maritime Attachment and Garnishment pursuant to Fed. R. Civ. P. Rule B attaching any and all assets of Defendant BG Shipping, including the M/V BBG HEZHOU, up to the amount of $15,248,907.05 for the purpose of obtaining and maintaining security for the arbitration of the parties' disputes in London.

97. Plaintiff also seeks limited discovery to discover information about the relationship(s) and agreement(s) between BG Shipping and the registered owners, lessors/charterers of the M/V BBG HEZHOU.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against *in personam* Defendant BG Shipping, citing it to appear and answer under oath all and singular the matters alleged in the Verified Original Complaint;

B. That since Defendant BG Shipping cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment attaching all property, tangible or intangible, in whatever form, of BG Shipping in the Southern District of Texas, including, but not limited to the M/V BBG HEZHOU berthed or to be berthed during the pendency of this action at Woodhouse Terminal, Port of Houston, 1606 Clinton

Drive, Houston, TX 77547 in the amount of $15,248,907.05, together with attorney's fees, costs, expenses, and interest;

C. That all persons claiming any interest in the same be cited to appear and, pursuant to Rules B and E of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, Answer the matters alleged in this Verified Original Complaint;

D. That the M/V BBG HEZHOU be condemned and sold free and clear of all liens and encumbrances and that the proceeds of said sale be directed to be placed in the Registry of the Court, and security for Plaintiff's claims as best can currently be estimated in the amount of $15,248,907.05;

E. That Plaintiff be authorized to serve limited discovery on Defendant BBG Shipping to discover the relationship(s) and agreement(s) between BG Shipping and the registered owner, lessors/charterers of the M/V BBG HEZHOU;

F. That the Court retain jurisdiction over the matter through the London Arbitration, and the confirmation of the arbitration award as a judgment of this Court, including any appeals thereof, and for any further or supplemental proceedings as may be necessary; and

G. That Plaintiff be awarded such other, further and different relief as the Court deems just and proper in law and equity.

Respectfully submitted,

By: */s/ Kevin P. Walters*
    Kevin P. Walters
    Texas State Bar No. 20818000
    Federal I.D. No. 5649
    Dimitri P. Georgantas
    Texas State Bar No. 07805100
    Federal I.D. No. 2805
    Blake E. Bachtel
    Texas State Bar No. 24116055
    Federal I.D. No. 3479533
    ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
    1600 Smith Street, Suite 5000
    Houston, Texas 77002-7380
    Telephone: (713) 224-8380
    Facsimile:  (713) 225-9545
    kevin.walters@roystonlaw.com
    dimitri.georgantas@roystonlaw.com
    blake.bachtel@roystonlaw.com

    **ATTORNEY FOR PLAINTIFF**
    **GENCO CONSTELLATION LTD.**

**OF COUNSEL:**

**WATSON FARLEY & WILLIAMS LLP**

John Kissane
Celinda Metro
250 West 55th Street, 31st Floor
New York, NY 10019
Telephone:  (212) 922-2200
jkissane@wfw.com
cmetro@wfw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GENCO CONSTELLATION LTD., <br> *Plaintiff,* <br><br> v. <br><br> BG SHIPPING CO. LTD., <br> *Defendant* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | C.A. No. _____ <br><br> IN ADMIRALTY, Rule 9(h) |

## VERIFICATION

STATE OF TEXAS         §
                       §
COUNTY OF HARRIS       §

BEFORE ME, the undersigned authority, on this day personally appeared Kevin P. Walters, who being duly sworn, deposed and stated as follows:

"I am an attorney for Plaintiff Genco Constellation Ltd. in connection with the referenced matter. I have read the foregoing Verified Original Complaint and know the contents thereof, and that the same are true to the best of my knowledge, information and belief, based upon documentation and information I received which was provided to me by Plaintiff. The reason that I make this verification instead of Plaintiff is that Plaintiff does not have officers or directors within this District."

_____
Kevin P. Walters

SUBSCRIBED AND SWORN to before me on the 2nd day of February, 2023.

SYLVIA L COOPER
Notary ID #2652944
My Commission Expires
January 4, 2024

_____
Notary Public in and for the
State of Texas

65990:46752897