UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GENCO CONSTELLATION LTD., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:23-cv-00365 |
| | § | |
| BG SHIPPING CO. LTD., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is an Expedited Motion to Vacate Attachment filed by SPDBFL No. Fifty-Three (Tianjin) Shipping Leasing Co. Ltd. ("SPD"). *See* Dkt. 12. Having reviewed the briefing, evidence, and applicable law, I recommend that SPD's Expedited Motion to Vacate Attachment be **DENIED**.

## BACKGROUND

On February 2, 2023, Genco filed its Verified Original Complaint against Defendant BG Shipping Co. Ltd. ("BG Shipping"), pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims. Genco seeks attachment of BG Shipping's property, including the *M/V BBG HEZHOU* (the "Vessel"), in the amount of $15,248,907.05 as security for its claims in an arbitration against BG Shipping arising out of the arrest of Genco's vessel in Ghana. *See* Dkt. 1. I authorized the issuance of process of maritime attachment and garnishment that same day. *See* Dkt. 6. On February 3, 2023, Genco filed a Verified Amended Complaint seeking the attachment of BG Shipping's property in the amount of $21,515,129.03, in light of recent developments in Ghana.[1]

---

[1] Genco has since requested leave to file its Verified Second Amended Complaint. *See* Dkt. 31. Like the Verified Amended Complaint, Genco's latest complaint simply accounts for recent events in Ghana and increases the attachment of BG Shipping's property to $35,299,645.42. *See* Dkt. 31-1 at 28. I will grant Genco's request to amend its complaint

On February 5, 2023, SPD filed a Statement of Right or Interest and entered a limited appearance in this matter pursuant to Rule E(8) as the registered owner of the Vessel. *See* Dkt. 11. SPD filed the instant motion, arguing that the attachment is improper and should be vacated because the Vessel is not the property of BG Shipping. In support, SPD attached the Vessel's Liberian registration showing SPD as the registered owner; the Builder's Certificate showing SPD as the Vessel's buyer; and the bareboat charter between World Achieve Holdings Limited ("World Achieve") as the charterer and SPD as "Owners." *See* Dkts. 12-1 through 12-4. Genco countered that the Vessel's inclusion on BG Shipping's fleet list, coupled with the fact that SPD's parent[2] "is a financial leasing company," constitute reasonable grounds to find that the arrangement between SPD and BG Shipping is a disguised financing agreement. Dkt. 16 at 14. Genco also pointed out that, other than attaching a portion of the charterparty to its Motion to Vacate, SPD "provides *no other information* about World Achieve." *Id.* at 27. Genco requested discovery, including the full charterparty between World Achieve and SPD.

On February 7, 2023, I held a Rule E(4)(f) hearing. At the hearing, I permitted the parties to engage in limited discovery and set a deadline for submitting supplemental briefing and evidence. On February 9, 2023, SPD submitted its reply along with the Commercial Management Agreement for the Vessel, a Novation and Supervision Agreement, a Deed of Assignment between World Achieve and SPD, and proof of Protection and Indemnity and Hull and Machinery coverage in favor of SPD. *See* Dkts. 28–29. On February 10, 2023, Genco submitted its sur-reply, arguing that the documents provided by SPD "definitively establish that: (1) the bareboat charterparty for the [Vessel] is a

---

by separate order. The allegations in Genco's latest complaint do not affect the analysis of whether the attachment should be vacated.

[2] The parties do not dispute that SPD is a wholly owned subsidiary of SPD Financial Leasing Company Limited (Puyin Financial Leasing Company Limited), which is itself "a financial leasing company that is a subsidiary of Shanghai Pudong Development Bank Co., Ltd." Dkt. 10 at 10.

finance lease; (2) that [World Achieve] is an empty shell entity created, controlled, and wholly-owned by BG Shipping to shield itself from creditors; and (3) therefore BG Shipping is the true owner of the [Vessel]." Dkt. 30 at 2. On February 12, 2023, I informed the parties that, having reviewed their submissions, I was inclined to deny the motion to vacate. *See* Dkt. 33. Specifically, I told the parties that I believed Genco had established reasonable grounds that the charterparty is a disguised financing agreement; that SPD does not maintain a meaningful economic reversionary interest in the Vessel; and that BG Shipping is the Vessel's true and beneficial owner. *See id.* Before ruling, however, I invited SPD to have the final word and submit supplemental briefing addressing Genco's arguments. I received SPD's submission that evening. *See* Dkt. 34. On February 13, 2023, I held a status conference to discuss the parties' most recent briefing. I gave SPD an opportunity to submit additional briefing addressing specifically Genco's assertion that where—as seems to be the case with the charterparty at issue here—a lessor must give a lessee credit for any sums received in excess of its residual interest in a good, "the parties are deemed as a matter of law to have intended the lease as security." *In re Grubbs Constr. Co.*, 319 B.R. 698, 719 (Bankr. M.D. Fla. 2005). I told the parties that I would not rule on the motion to vacate until receiving and reviewing SPD's response to this argument. SPD filed a letter addressing *Grubbs* on February 14, 2023. *See* Dkt. 37. Having reviewed it, I remain convinced that the attachment should stand.

## LEGAL STANDARD

"Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." FED. R. CIV. P. SUPP. AMC R. E(4)(f). At a Rule E hearing, "a district court must vacate an attachment if the plaintiff fails to sustain [its] burden of showing": "that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the

defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). "The post-arrest hearing is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant." *Salazar v. Atl. Sun*, 881 F.2d 73, 79 (3d Cir. 1989). "This standard has been defined as 'probable cause' or 'reasonable grounds.' The standard applies to post-attachment cases as well as post-arrest cases." *Ullises Shipping Corp. v. FAL Shipping Co. Ltd.*, 415 F. Supp. 2d 318, 322 n.37 (S.D.N.Y. 2006) (cleaned up).

"When determining whether such reasonable grounds exist, Supplemental Rule E does not restrict review to the adequacy of the allegations in the complaint. A court also may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing." *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006) (cleaned up). "Generally speaking, an exhaustive adversarial hearing is not necessary for resolution of those issues. Thus, in many instances we would expect that an informal proceeding, perhaps in the nature of a conference before the district court, supplemented by affidavits and legal memoranda as directed by the court might be sufficient." *Salazar*, 881 F.2d at 80.

## ANALYSIS

Here, there is no dispute that Genco has a valid prima facie admiralty claim against BG Shipping or that BG Shipping cannot be found within the district. Rather, the dispute is whether BG Shipping's *property* can be found withing the district. Specifically, whether the Vessel is, in fact, BG Shipping's property. SPD, not BG Shipping, is the registered owner of the Vessel. But that does not end the inquiry. Courts have refused to vacate attachments where the registered owner was "nothing more than a financier." *Richardson Stevedoring & Logistics Servs., Inc. v. Daebo Int'l Shipping Co.*, No. 15-490, 2015 WL 1781712, at *1 (E.D. La. Apr. 20,

2015). Genco contends that is the case here. Specifically, Genco argues that World Achieve is a shell entity wholly owned by BG Shipping; the bareboat charterparty for the Vessel is a finance lease; and BG Shipping is the Vessel's true owner. SPD concedes "that Genco has established 'reasonable grounds' that BG Shipping could be deemed the bareboat charterer of the [Vessel]." Dkt. 37 at 3.[3] So, the only question that remains is whether the charterparty is just that, or if it is actually a finance lease, which would make BG Shipping the Vessel's true owner. Before I can answer that question, though, I must decide what law should govern my analysis.

"In maritime commercial transactions, the Uniform Commercial Code ["UCC"] is taken as indicative of the federal common law of admiralty." *Interpool Ltd. v. Char Yigh Marine (Panama) S.A.*, 890 F.2d 1453, 1459 (9th Cir. 1989), *opinion amended on denial of reh'g*, 918 F.2d 1476 (9th Cir. 1990). The relevant Texas statute is identical to its UCC counterpart. *Compare* TEX. BUS. & COM. CODE ANN. § 1.203, *with* U.C.C. § 1-203 (AM. L. INST. & UNIF. L. COMM'N 2021). "In such circumstances, it makes not the slightest difference whether the [UCC] is applied directly as state law or indirectly or analogically as a statement of what the federal law of ship mortgages would be if there was a federal law of ship mortgages." *Interpool*, 890 F.2d at 1459 (cleaned up). Accordingly, I will look to § 1-203 of the UCC, and its Texas counterpart, to guide my analysis.

Genco would have me apply § 1-203's "Bright-Line Test" to find a per se security interest. Dkt. 30 at 13 (quoting *In re Lasting Impressions Landscape Contractors, Inc.*, 579 B.R. 43, 51 (Bankr. D. Md. 2017)). The "Bright-Line Test" contains two prongs:

---

[3] Even without a concession from SPD, I would still find that BG Shipping is the bareboat charterer of the Vessel. The evidence shows that BG Shipping, not World Achieve, is the performance guarantor of the shipbuilding contract for the Vessel; BG Shipping is the guarantor of World Achieve's obligations under the charter; SPD took a "Share Charge" over BG Shipping's ownership interest in World Achieve as security; and the Novation Agreement was signed by the same attorney on behalf of both World Achieve and BG Shipping. These facts combined are more than reasonable grounds that World Achieve is indistinguishable from BG Shipping such that BG Shipping is the actual bareboat charterer of the Vessel.

> [T]he first part of this test requires that the rental payments the lessee must pay cannot be terminable by the lessee during the term of the lease. This factor requires the existence of a "hell or high water" clause. A "hell or high water" clause requires that the lessee, once it accepts the leased item, must pay its rent in all events (i.e., come hell or high water) without regard for the proper function of the item ***or the conduct of the lessor*** with respect to the subject or any other transaction. The second part of the conjunctive test lists four factors, one of which must also exist for the lease to be deemed a security interest.

*Excel Auto & Truck Leasing, L.L.P. v. Alief Indep. Sch. Dist.*, 249 S.W.3d 46, 51 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (Hanks, J.) (emphasis added) (citations omitted). Genco contends that cl. 42.2 of the charterparty is a "hell or high water" clause because it provides that the obligation to pay charter-hire is "absolute and unconditional under any and all circumstances and shall not be affected by any circumstances of any nature whatsoever." Dkt. 17-2 at 31. That contractual provision certainly reads like a "hell or high water" clause. The only problem is that cl. 47.2 provides for three circumstances (albeit narrow ones) in which *the lessor's conduct* permits the charterer to terminate and "redeliver the Vessel to Owners." *Id.* at 46. It seems to me that because the charterer can be relieved of its obligations due to the lessor's conduct, cl. 47.2 keeps me from applying § 1-203's Bright-Line Test. Accordingly, I "must engage in a contextual analysis to determine whether the facts and circumstances surrounding the agreement evidence the creation of a security arrangement or a true lease." *In re Lasting Impressions*, 579 B.R. at 51.

      Genco contends that SPD does not have a meaningful economic reversionary interest in the Vessel, and thus holds only a security interest as a matter of law. This argument is based on the fact that if SPD were forced to take possession of and sell the Vessel, "any balance after deduction of [the] Termination Sum . . . shall be paid to [BG Shipping]." Dkt. 17-2 at 47. Genco contends that whenever the lessor must give the lessee credit for any sums received in excess of its residual interest in the leased item, "the parties are deemed as a matter of law to have intended the

6

lease as security." *Grubbs*, 319 B.R. at 719. SPD counters that *Grubbs*—which stressed that the determination of whether an agreement is a true lease or a security interest "depends upon the circumstances of each case"—is distinguishable on the facts because the lessee in *Grubbs* was obligated to pay the lessor "a final balloon payment equal to 20 percent of the original amount borrowed to finance the acquisition." *Id.* at 707, 711. SPD directs my attention to *In re HP Distribution, LLP*, 436 B.R. 679 (Bankr. D. Kan. 2010), in which the court, applying Texas law, found that a debtor's truck lease agreements were true leases and not disguised finance leases. Having read *HP Distribution*, though, I am now all the more convinced that the charterparty here is a disguised finance lease.

    To start, the lessee in *HP Distribution* had a "substantial" and "meaningful" right to terminate its leases at any time. *See* 436 B.R. at 687–68. In contrast, the charterer's right to terminate the charterparty here is tied to some fault of Owners. *See* Dkt. 17-2 at 46. No amount of money or notice permits the charterer to terminate for any other reason. I find this distinction significant. I also find significant that the court in *HP Distribution* was required to consider Texas's statutory neutrality regarding "terminal rent adjustment clauses" in *motor vehicle* leases. *See* 436 B.R. at 686 (citing TEX. TRANSP. CODE ANN. § 501.112). That statute is simply not relevant in this maritime matter. Still, SPD encourages me to look at the spectrum of possibilities between a true lease and a security agreement, urging that the charterparty here hews closer to a lease.

    SPD highlights that:

> In the instant case: 1) the charterer has a right to terminate the charter; 2) the original terms of the charter (14.6 years) is not necessarily equal to or greater than the economic life of the vessel, which could be in the range of 18-20 years; 3) the charterer is not bound to renew the lease for the remaining economic life of the vessel nor is it bound to become of the owner of the vessel; 4) the charterer's option to renew the charter requires payment . . . greater than what would be considered "no additional consideration or nominal consideration;" and, 4) the charterer's option to purchase the vessel

call for payment greater than what would be considered "no additional consideration or nominal consideration."

Dkt. 37 at 2–3. I will assume, *arguendo*, that these are true statements.[4] But these points speak more to the Bright-Line Test than they do the real question: Does SPD "retain a meaningful upside or downside in [the Vessel]?" *HP Distribution*, 436 B.R. at 690. The way I read the charterparty, the answer is no. BG Shipping is bound to keep paying SPD for 14.6 years, and the only way that BG Shipping can be relieved of that obligation is *through SPD's conduct*. *See* Dkt. 17-2 at 46. That sounds an awful lot like a mortgage.

But perhaps the most appropriate clause to look to is the one directly implicated by these proceedings. Per cl. 42.2(e), the "judicial attachment or arrest, forfeiture or marshal's or other sale of the Vessel" does not affect the charterer's obligation to pay charter-hire. Dkt. 17-2 at 31. Of course, SPD is always at risk that the charterer will simply stop paying. But that is the risk that every mortgagor assumes. Moreover, SPD has additional security in that event, "specifically the general assignment of earnings and insurances . . . and a pledge over the shares or membership interests of the Charterers by BG Shipping." Dkt. 30-3 at 7. Given these facts, and all the points raised in Genco's sur-reply, I have a hard time pinpointing SPD's upside or downside in the Vessel. Accordingly, I find that Genco has established reasonable grounds that BG Shipping is the true and beneficial owner of the Vessel such that the attachment should stand.

---

[4] I do not have sufficient briefing or testimony before me to ascertain "[t]he 'remaining economic life of the goods' and 'reasonably predictable' fair market rent, fair market value, or cost of performing under the lease agreement," each of which "must be determined with reference to the facts and circumstances at the time the transaction is entered into." U.C.C. § 1-203(e). Unlike a bankruptcy court, however, it is not my task at this juncture to definitively decide as a matter of law whether the charterparty is a lease or a security agreement. My only job is to ask whether Genco has established reasonable grounds that it is a security agreement such that the attachment should be maintained under Rule B.

## CONCLUSION

For the reasons stated above, I recommend that SPD's Expedited Motion to Vacate Attachment (*see* Dkt. 12) be **DENIED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 15th day of February 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE